UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

                                                                            Case No. 09-73008-ast

Westhampton Coachworks, Ltd.,                        Chapter 11

                      Debtor.
-------------------------------------------------------------X
-------------------------------------------------------------X
In re:

                                                                     Case No. 09-73009-ast

Westhampton Classic Cars,                              Chapter 11

                      Debtor.
-------------------------------------------------------------X

## DECISION AND ORDER ON MOTIONS TO DISMISS OR CONVERT

Pending before the Court in the above referenced related chapter 11 cases of Debtor Westhampton Classic Cars d/b/a Manhattan Motorcars of the Hamptons ("Classic Cars") and Debtor Westhampton Coachworks, Ltd. ("Coachworks" and together, "Debtors") are the motions (the "Motions") filed by the United States Trustee ( the "UST") seeking dismissal or, in the alternative, conversion to chapter 7, of these chapter 11 cases. [09-73008 dkt item 110; 09-73009 dkt item 86 ][1]  Debtors filed objections to the Motion.  This Court conducted a hearing on the Motions on November 3, 2010 (the "Hearing").

By its Motions, the UST seeks dismissal or conversion of these cases due to both Debtors' post-petition losses and inability to reorganize and based on certain of Debtors' pre- and post-petition transactions.  In addition, as to Coachworks, the UST seeks dismissal or conversion due to its failure to pay post-petition taxes.  For the reasons herein, this Court grants the Motions and

---

[1] References to the docket [dkt item –] are to the associated ECF entries for each main case.

Decision and Order - p. 1

will convert these cases to chapter 7.

## Procedural History

On April 29, 2009 (the "Petition Date"), Classic Cars and Coachworks each filed voluntary petitions under chapter 11 of the Bankruptcy Code. Thereafter, on July 13, 2009, Richard Rubio, the 100% shareholder of Coachworks and 98% shareholder of Classic Cars ("Rubio") and his wife, Eileen Rubio, filed a joint voluntary chapter 11 petition, case number 09-75163-ast. On May 6, 2010, Tuscan Sun Ristorante, Inc. d/b/a Annona ("Tuscan"), a former tenant of Rubio and whose President is Rubio, filed a voluntary chapter 11 petition, case number 10-73391-ast.

The UST has not appointed a Committee of Unsecured Creditors pursuant to 11 U.S.C. § 1102(a) for either Classic Cars and Coachworks. Throughout the second half of 2009 and throughout 2010, this Court conducted general case status conferences in the Classic Cars and Coachworks cases, in accordance with Section 105(d) of the Bankruptcy Code. *See* 11 U.S.C. § 105(d). On March 9, 2010, this Court entered bar date orders in Coachworks [09-73008, dkt item 80] and Classic Cars [09-73009, dkt item 72], establishing May 14, 2010, as the deadline for creditors to file proofs of claim.

The UST has also filed motions to convert or dismiss in the Rubio and Tuscan cases. On November 29, 2010, this Court issued its decision and Order converting the Tuscan case to chapter 7. [10-73391-ast, dkt items 31, 32] The Court will address the motion to dismiss or convert filed in the Rubio case by separate decision and order.

## Factual Background

*Facts Specific As to Coachworks:*

Coachworks was founded in 1978. Prior to the Petition Date, Coachworks operated as a body shop and restoration facility, and was one of only four body shops in the United States approved to undertake structural damage repairs on Rolls Royce automobiles. Coachworks had built a state-of-the art repair shop that operated in Westhampton Beach, and grew its revenues to $7-8 million annually. As of the Petition Date, Coachworks operated from premises at 114 Old Riverhead Road, Westhampton, under a sublease from Rubio. The landlord at the premises is 114 RR, LLC. This lease had been in default for several months prior to the Petition Date.

Coachworks's Schedules reflect aggregate assets valued at $535,242.38, aggregate secured liabilities of $350,962.27, priority obligations aggregating $23,481.06, and total unsecured debts of $2,270,338.30. [09-73008, dkt item 1] Coachworks's monthly operating reports ("MORs") through August 2010 reflect gross revenues of $4,888,581.08 and losses from the operations of the businesses in the amount of $84,664.41, a negative $4,274.68 in its debtor-in-possession accounts, and $429,140.72 owed for trade accounts payable. Coachworks's MOR through August 2010 also reflects that it, along with Rubio, Classic Cars, Tuscan, and other related entities, have engaged in significant intercompany loan transactions, both pre-filing and post-filing, with outstanding loan balances exceeding $1.5 million. [09-73008, dkt item 109] Coachworks has neither sought nor obtained Court approval for any of the post-filing loan transactions.

Coachworks's MOR through October 2010 reflects post-petition operating revenue of $5,338,869.44, and a net post-petition operating loss of $128,259.59, a negative cash balance of $14,677.25, total assets of $2,403,161.97, and total liabilities of $3,293,196.30. Coachworks has also incurred professional fees and expenses post-petition, which are not included in its stated loss. [09-73008, dkt item 115-1]

By Order entered August 12, 2010, Rubio's landlord, 114 RR obtained stay relief to

exercise its state law rights regarding Coachworks's operating premises. [09-73008, dkt item 105]

Finally, in a Statement of Administrative Taxes filed September 2, 2010 [09-73008, dkt item 108], Coachworks acknowledged having accumulated unpaid post-petition payroll taxes of $211,549.03, and unpaid post-petition sales taxes of $126,212.90.

Coachworks opposed the UST Motion. In its opposition filed on October 29, 2010, Coachworks stated as follows:

> Feasibility of a plan can be established by: (1) DIP loans convertible to equity sought to be obtained in the aggregate amount of up to $400,000.00 from individual investors within the next thirty (30) days; (2) a recovery projected to be between $100,000.00 and $200,000.00 on Debtor's loss of business insurance policy, and (3) operating revenues from the Debtor's business which has been severely hampered since March, 2010 by severe damage caused to the Debtor's operating premises from the documented nor'easter storm which hit the east end of Long Island in or about March, 2010.
>
> The foregoing sources of plan funding will yield more than enough money to cure all administrative tax obligations incurred by the Debtor during the pendency of its chapter 11 case and form the foundation for a confirmable plan of reorganization.

[09-73008, dkt item 113]

At the Hearing of November 3, 2010, Coachworks repeated its belief that this "white knight" was in the offing, and that an application for DIP financing would be filed within the same thirty days referenced in its Opposition. However, as of the date of this Order, no such application has been filed.

As for the projected recovery from a business loss insurance policy, Coachworks has been expressing at status hearings for several months that such recovery was in the offing, but to date, no such recovery has materialized, nor has court approval for a settlement related thereto been sought. As for the damage to the operating premises, that matter has been known to Debtor and been utilized as a basis for Coachworks's inability to operate profitably throughout much of the

Decision and Order - p. 4

case. However, Coachworks has demonstrated that although it has operated and generated substantial revenues, it has lost money and has consistently failed to comply with its obligations to pay post-petition sales and payroll taxes.

Thus, Coachworks has demonstrated both an inability to operate profitably post-petition, and an inability to confirm a plan of reorganization.

*Facts Specific As to Classic Cars:*

Classic Cars is in the business of selling new and pre-owned luxury automobiles. Classic Cars also operated under the d/b/a of Manhattan Motorcars of the Hamptons. However, Classic Cars has conducted virtually no business post-petition but suffered post-petition losses, thereby demonstrating both an inability to operate profitably post petition and an inability to confirm a plan of reorganization.

Classic Cars's Schedules reflect aggregate assets valued at $364,300.00, aggregate secured liabilities of $255,000.00, priority obligations aggregating $416,265.00, and total unsecured debts of $2,709,173.44. [09-73009, dkt item 1] Since the filing, based on its MOR through August 2010 [dkt item 85], Classic Cars has generated no or de minimus income and sustained losses of $63,268.60, had only $29.00 on deposit in its debtor-in-possession account, and generated $105,925.95 in post-petition accounts payable.

Classic Cars's MOR through October 2010 reflects $11.00 in its DIP account, a post-petition operating loss of $63,286.60, total assets of $1,606,339.98 and total liabilities of $2,570,431.60. Of the stated total assets, the vast bulk stated to be accounts payable or loans receivable or amounts "due to" Classic Cars, of which $480,056.89 is stated as due from "Annona," which is the restaurant name under which Tuscan operated. Classic Cars has also incurred professional fees and expenses post-petition, which are not included in its stated loss.

[09-73009, dkt item 90]

Classic Cars opposed the UST Motion. In its opposition filed on October 29, 2010 (the "Opposition"), Classic Cars stated as follows:

> Feasibility of a plan can be established by: (1) the settlement reached with Lamborghini, a copy of which is being annexed hereto as Exhibit "A", which will result in a payment to the estate of $100,000.00; (2) an agreement being negotiated by and between the Debtor and Nissan of Smithown whereby the Debtor's showroom would be stocked with more than twenty (20) new Nissan vehicles and/or trade-in vehicles such that the Debtor would be in a position to begin selling automobiles within the next thirty (30) days, and (3) approval of a pending application for floor plan financing in the aggregate amount of $500,000.00 to enable the Debtor to begin selling new and/or used luxury automobiles within the next thirty (30) days.
>
> The foregoing sources of plan funding and the operating revenues generated thereby will enable the Debtor to confirm a plan of reorganization within a reasonable amount of time.
>
> The Debtor's showroom was severely damaged by the winter storm which occurred in March, 2010 which hampered the Debtor's ability to sell automobiles and is in the process of being fully repaired within the immediate future.

[09-73009, dkt item 89]

At the Hearing of November 3, 2010, Classic Cars repeated its belief that its "white knight" was in the offing, and that an application for floor plan financing would be filed within the same 30 days referenced in the Opposition. However, Classic Cars has expressed this hope for several months, and, as of the date of this Order, no such application for floor plan financing has been filed.

As for the Lamborghini settlement, that agreement was executed in May 2010, and required Court approval by July 16, 2010, absent which the agreement was voidable. [09-73009, dkt item 89-1 ¶ 2] To date, Classic Cars has not sought approval of the Lamborghini settlement. As for the damage to the Classic Cars showroom, that matter has been known to Debtor and been

Decision and Order - p. 6

utilized as a basis for Classic Cars inability to operate throughout much of the case.

Thus, Classic Cars has demonstrated both an inability to operate profitably post-petition, and an inability to confirm a plan of reorganization.

## Legal Analysis

*Dismissal or Conversion Under Section 1112*

The parties dispute whether cause exists to either dismiss or convert the Coachworks and Classic Cars cases. Therefore, the Court must determine whether cause exists to dismiss or convert and, then if so, whether dismissal or conversion to chapter 7 is in the best interests of the creditors and the estates.[2]

This Court very recently addressed these issues in *In re Tuscan Sun Ristorante, Inc.*, No. 10-73391 (Bankr. E.D.N.Y. Nov. 29, 2010) and *In re Jude Thaddeus Partners 1, Inc.*, No. 10-73014, 2010 WL 4496836 (Bankr. E.D.N.Y. 2010). As noted there, Section 1112(b)(1) of the Bankruptcy Code provides as follows:

> Except as provided in paragraph (2) of this subsection, subsection (c) of this section, and section 1104(a)(3), on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause.

11 U.S.C. § 1112 (b)(1); *Jude Thaddeus*, No. 10-73014, 2010 WL 4496836 at *7. As also noted therein, Section 1112(b) provides a nonexhaustive list of circumstances constituting cause. *See* 11 U.S.C. § 1112(b)(4); *see also Pal Family Credit Co., Inc. v. County of Albany et al.*, 425 B.R. 1, 5

---

[2] Neither Debtor nor the UST asserts that unusual circumstances exist which may be specifically identified by the Court showing that dismissal or conversion is not in the best interests of creditors and the estate under 11 U.S.C. § 1112(b)(2).

(N.D.N.Y.2010); *In re Ameribuild Constr. Mgmt., Inc*. 399 B.R. 129, 132 (Bankr. S.D.N.Y. 2009). "Because the list of grounds for converting or dismissing a Chapter 11 case under § 1112(b) is illustrative, not exhaustive, the court may consider other grounds and use its equitable powers to reach an appropriate result." *AdBrit*e, 290 B.R. 209, 217 (Bankr. S.D.N.Y. 2003) (citing *C-TC 9th Ave. P'ship*, 113 F.3d at 1311).

Here, as to Classic Cars and Coachworks, the UST asserts cause is established under 11 U.S.C. § 1112(b)(4)(A), based upon "(A) substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation[.]" In addition, as to Coachworks, the UST seeks dismissal or conversion under Section 1112(b)(4)(I), based upon Coachworks's "failure to timely pay taxes owed after the date of the order for relief[.]"

Section 1112 (b)(1) provides that once cause is established, the case shall be dismissed or converted unless the Court specifically finds unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate. Section 1112(b)(2) places the burden of proof of demonstrating such special circumstances on the debtor. However, the unusual circumstances exception to dismissal or conversion under Section 1112(b)(2) is inapplicable where the movant seeks dismissal or conversion based on the loss and diminution of estate assets and absence of a reasonable likelihood of rehabilitation under Section 1112(b)(4)(A). *See Tuscan Sun*, No. 10-73391 (Bankr. E.D.N.Y. Nov. 29, 2010); *see also In re The 1031 Tax Group, LLC*, 374 B.R. 78, 93 (Bankr. S.D.N.Y. 2007).

As to both Coachworks and Classic Cars, this Court finds that cause exists under Section 1112(b)(4)(A). Both Debtors have had more than adequate time of over eighteen months to propose a meaningful plan for rehabilitation. Although both Debtors hoped for a 'white knight,'

one has not materialized within the time frames these Debtors expressed.

*Coachworks's Failure to Pay Post-petition Taxes*

As noted, Coachworks filings reflect accrued, and unpaid, post-petition tax obligations in the amount $367,502.18 through August 2010. Coachworks MOR for August 2010, reflects an aggregate debtor in possession bank balance of a negative $4,274.68. Coachworks's October 2010 MOR reflects post-petition payroll tax liabilities of $285,331.80, and post-petition sales tax liabilities of $183,639.25. [09-73008, dkt item 115-1]. In its Opposition to the UST Motion, Coachworks did not provide a reasonable justification for its failure to pay post-petition taxes or demonstrate that its failure to do so will be cured within a reasonable time, as required under Section 1112b(2)(B). Thus, cause exists to dismiss or convert Coachworks under Section 1112(b)(4)(I).

*Conversion to Chapter 7*

The UST asserts that these cases should be converted to chapter 7. To obtain conversion, the UST must establish that conversion is in the best interests of creditors and the estate. *See In re AdBrite Corp.*, 290 B.R. 209, 215 (Bankr. S.D.N.Y. 2003); *see also In re Camden Ordnance Mfg. Co. of Ark., Inc.*, 245 B.R. 794 (Bankr. E.D. Pa. 2000); *In re OptInRealBig.com, LLC*, 345 B.R. 277, 282 (Bankr. D. Colo. 2006); *see also In re Warner*, 83 B.R. 807 (Bankr. M.D. Fla. 1988).[3] In seeking conversion, the UST asserts that a trustee can investigate the Debtors' business

---

[3] Courts have not hesitated to convert a chapter 11 case to a chapter 7 case when cause exists. *See, e.g.*, *In re Milford Conn. Assoc., L.P.*, 404 B.R. 699 (2d Cir. 2009) (holding that District Court did not err in granting United States Trustee's motion for conversion to Chapter 7 when the debtor's failure to expeditiously administer the estate established sufficient cause for the conversion); *In re Halpern*, 229 B.R. 67, 73 (E.D.N.Y. 1999) (finding cause established under 11 U.S.C. §1112(b) by debtor's series of motions and bankruptcy filings delaying the sale of properties by which debtor hoped to benefit from speculative increase in equity); *In re Photo Promotion Assoc., Inc.*, 47 B.R. 454 (S.D.N.Y. 1985) (finding cause to convert case to Chapter 7 existed when debtor continued to sustain substantial losses during post-petition period).

dealings, particularly the inter-company and related entities transactions both pre- and post-petition, and liquidate the estate's assets.

*The Test to Dismiss or Convert*

As this Court noted in *Jude Thaddeus* and *Tuscan Sun*, courts that have addressed Section 1112(b) have not developed a bright-line test to determine when conversion or dismissal is in the best interests of creditors and the estate. This Court has employed an analysis based upon a ten-factor test to determine whether dismissal or conversion is in the best interests of creditors and the estate:

1. Whether some creditors received preferential payments, and whether equality of distribution would be better served by conversion rather than dismissal;
2. Whether there would be a loss of rights granted in the case if it were dismissed rather than converted;
3. Whether the debtor would simply file a further case upon dismissal;
4. The ability of the trustee in a chapter 7 case to reach assets for the benefit of creditors;
5. Whether conversion or dismissal of the estate would maximize the estate's value as an economic enterprise;
6. Whether any remaining issues would be better resolved outside the bankruptcy forum;
7. Whether the estate consists of a "single asset";
8. Whether the debtor had engaged in misconduct and whether creditors are in need of a chapter 7 case to protect their interests;
9. Whether a plan has been confirmed and whether any property remains in the estate to be administered; and
10. Whether the appointment of a trustee is desirable to supervise the estate and address possible environmental and safety concerns.

COLLIER ON BANKRUPTCY ¶ 1112.04[7]; at 1112-39-1112-40; *see also Tuscan Sun*, No. 10-73391 (Bankr. E.D.N.Y. Nov. 29, 2010); *Jude Thaddeus*, No. 10-73014, 2010 WL 4496836 at *9-10.

In the present cases, a plan has not been confirmed and will not be confirmed, and no sale of assets has been approved. This Court will consider the following factors in determining whether to convert or dismiss: the known assets to administer; the impact of dismissal or

conversion on creditors; any known available avoidance actions; the position of the United States Trustee; and the Court's interest in protecting the bankruptcy process.

    A.    *Assets to Administer*

Creditors of these estates would benefit from the appointment of a chapter 7 trustee to oversee the liquidation and distribution of the assets, and to investigate the related party transactions.[4] Classic Cars should have the benefit of the Lamborghini settlement, and Coachworks should have the benefit of the business loss insurance policy and/or settlement. Further, Coachworks has personal property and accounts receivable to liquidate. Classic Cars has personal property and possible accounts receivable to liquidate.

    B.    *Impact of Dismissal or Conversion on Creditors*

In Coachworks, the bar date passed on May 14, 2010. Coachworks scheduled over twenty-five unsecured creditors with claims exceeding $2.2 million in its Schedule F. [09-73008, dkt item 1] Thirty-three claims were filed against Coachworks, some of which may be duplicative, which exceed $2 million in the aggregate. This includes unsecured claims as filed in the aggregate amount of $1,018,846.35.

In Classic Cars, the bar date also passed on May 14, 2010. Classic Cars scheduled twenty-three unsecured creditors with claims exceeding $ 2.7 million in its Schedule F. [09-73009, dkt item 1] Fifteen claims were filed against Classic Cars, some of which may be duplicative, which approximate $4 million in the aggregate. This includes unsecured claims as filed in the aggregate amount of $3,365,677.75.

The creditors in both cases are better served by the centralized collection and disbursement

---

[4] This Court is not prepared to conclude on this record that Debtors engaged in misconduct as described under Collier's factor 8.

Decision and Order - p. 11

provided by the bankruptcy process.

    C.    *Avoidance Actions*

As noted, a trustee can investigate the inter-company and related entities transactions both pre- and post-petition, and determine if any avoidance actions should be pursued.

    D.    *Position of the United States Trustee*

As noted in *Jude Thaddeus* and *Tuscan Sun*, the UST is appointed pursuant to Title 28, Section 581.[5] 28 U.S.C. § 581. Among the statutory functions of the UST is to maintain and supervise a panel of trustees eligible to serve in chapter 7 and 11 cases, and to supervise the administration of cases and trustees in cases under chapters 7, 11, 12, 13, and 15 of title 11. 28 U.S.C. § 586(a). Many of the assigned UST functions involve monitoring cases and filing pleadings, or providing comments on a number of facets of bankruptcy matters. As such, a certain degree of deference should be given to the position of the UST. This Court certainly gives due weight to the UST's position seeking conversion of these cases.

    E.    *The Court's Interest in Protecting the Bankruptcy Process*

The Court must balance the competing benefits the bankruptcy process offers to both debtors and creditors. Debtors sought protection from their creditors and accepted the benefits of bankruptcy protection for over eighteen months. Now their creditors, the majority of whom are unsecured, are entitled to the protections afforded by a chapter 7 trustee. Again, utilization of the centralized forum bankruptcy provides to collect and disburse available assets is in the best interest of creditors.

---

[5] The statute applies to United States Trustees appointed in all federal judicial districts except Alabama and North Carolina, which instead have Bankruptcy Administrators. *See* 28 U.S.C. § 581 Note (3); *see also* http://www.uscourts.gov/bankruptcycourts/administrators.html.

*The Court Finds that Conversion Is in the Best Interests of Creditors of the Estate*

This Court finds and concludes that each of these estates and their respective creditors would benefit from the conversion of these cases to chapter 7 and the appointment of a chapter 7 trustee(s). *Cf. In re Ameribuild Constr. Mgmt., Inc*. 399 B.R. 129, 133-34 (Bankr. S.D.N.Y. 2009)(finding that the appointment of an independent fiduciary to examine transactions between the debtor and other entities would benefit the creditors of the estate).

## **Conclusion**

Based on the foregoing, this Court concludes that the best interests of creditors and the estates favor conversion of the Coachworks and Classic Cars cases to chapter 7. Separate orders hereon shall issue.

**Dated: December 21, 2010**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**